**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Taylor Excavating, Inc.,                            Case No. 3:09CV268

         Plaintiff

    v.                                                 **ORDER**

Abele Tractor & Equipment Co., Inc., et al.,

         Defendants

      Plaintiff Taylor Excavating (Taylor), an Ohio-based company, purchased an excavator from Five Star Developers (Five Star) in 2005. Five Star began leasing the excavator from defendant Abele Tractor & Equipment Co. (Abele) in 2000, and in 2001, entered into a Retail Sales Order with Abele to purchase the excavator. Abele did not perfect its security interest at the time of purchase.

      In 2006, following a dispute over the amount still owed on the excavator, Abele demanded its return from Five Star. At this point, Abele perfected its security interest with the New York Department of State. On learning that Five Star had sold the excavator, Abele filed a police report alleging its theft.

      On March 6, 2007, Abele sent an agent, Jeff Eby, to repossess the excavator from Taylor. At the time of repossession, Abele through Eby asserted that it was the true owner of the excavator,

1

Five Star sold it to Taylor without legal right to do so, and it was pursuing criminal charges against Five Star.[1]

In 2007, Abele and Taylor negotiated Taylor's second purchase of the excavator. Taylor now owns the excavator. Its suit against Abele asserts claims for fraud, civil theft, negligent misrepresentation, and unjust enrichment arising from Abele's 2006 repossession from and 2007 resale to Taylor of the excavator.

Jurisdiction exists under 28 U.S.C. § 1332.

Pending are counter-motions for summary judgment [Docs. 40, 47] and defendant's motion to dismiss for failure to join an indispensable party. [Doc. 69].  For the reasons discussed below, Abele's motion for summary judgment is granted in part and denied in part, Taylor's motion for summary judgment is granted in part and denied in part, and Abele's motion to dismiss is denied.

**Factual Background**

On June 28, 2000, Abele agreed to rent an SK210 2000 Kobelco excavator to Five Star. The agreed-on monthly rental was $5,737.88. Paragraph 21 of the original Rental Lease Agreement stated: "Should a purchase agreement develop, Lessee agrees and understands that Abele Tractor & Equipment Co., Inc. has a SECURITY INTEREST in all equipment that Lessee may purchase from Lessor until the full purchase price thereof is paid."

On June 6, 2001, at Five Star's request, Abele converted the rental into a sale. The parties agreed, per a Retail Sales Order (RSO), to convert the lease into a sale at a cost of $126,300 to Five Star, with a one percent interest charge per month on the declining balance owed. Per the terms of

---

[1] The parties do not agree, and it is not clear from the motions, what the full contents of the March 6, 2007, conversation were.

the RSO, Abele retained a security interest in the excavator. As noted, Abele did not concurrently perfect its security interest in the excavator with the New York Secretary of State.

At some point before March, 2005, Five Star set up a separate LLC to sell the excavator. In March, 2005, plaintiff found Five Star's listing for the excavator on machinerytrader.com, and, using the contact information on that site, contacted Five Star. Five Star agreed to sell the excavator to Taylor for $85,000.

On or about March 26, 2005, Taylor made a down payment of $2,000 to Five Star; on April 5, 2005, it completed the purchase. At the time of purchase, the excavator had an Abele sticker on its boom. Plaintiff inquired with the Dutchess County (New York) courthouse about a UCC filing on the excavator, and found none. On the date of sale, Five Star still owed, according to Abele, $42,540.30 for the excavator.

Five Star's subsequent payments to Abele were sporadic. By the Summer of 2006, Abele either suspected or became aware that Five Star was attempting to sell the excavator.

Abele filed a pre-litigation discovery action in the Albany County (New York) Supreme Court. In a November 6, 2006 affidavit, Abele stated that it entered into a retail sales order with Five Star for the purchase of the excavator as a "rental purchase" transaction. It characterized the agreed-on price as a "purchase price." Abele also told the court it had prepared a UCC financing statement in conjunction with the retail sales order which appeared on record in the files of the New York Secretary of State.[2]

---

[2] The phrase "in conjunction with" is inapposite here, as the parties signed the RSO in 2001, and Abele filed the financing statement on July 24, 2006.

The New York court subsequently issued a Decision and Order permitting Abele "to examine [the Lowins, the owners of Five Star] for the purpose of obtaining information with reference to the [Excavator]."

Some time after it filed the discovery action, Abele filed criminal charges for theft against Five Star and the Lowins in Dutchess County, New York. In late 2006 or early 2007, defendant hired private investigator Jeff Eby to track down and repossess the excavator, which was in Taylor's possession in Delta, Ohio.

On March 6, 2007, Eby notified the Delta Police Department of his intention to repossess the excavator. Eby located Tom Taylor, one of Taylor's owners, at Taylor's home. When Eby showed up to speak to Taylor, two Delta police officers also arrived to monitor the encounter. Although the parties differ on the contents of that conversation, it is uncontested that Eby told Taylor of the proceedings in New York, and claimed the excavator was stolen from Abele, the true legal owner of the machine. Taylor claims that Eby warned him of potential criminal prosecution should he not relinquish the excavator.[3]

On March 7, 2007, Taylor repurchased the excavator from Abele. Thirteen days later, Taylor picked up the excavator from Abele. . When Taylor took possession, it signed a release that "forever released and discharge[d] Abele Tractor from all debts, demands, actions, suits, agreements, damages and any and all claims, demands and liabilities . . . which [Taylor Excavating] . . . had."

In March, 2008, after a Dutchess County grand jury refused to return an indictment against the Lowins for theft, the district attorney declined further prosecution against them.

---

[3] The parties' motions do not make clear the chain of events between March 6, 2007 and March 20, 2007, but it seems as if at some point Taylor relinquished physical possession of the excavator to Abele.

4

Taylor filed this lawsuit in the Fulton County, Ohio, Court of Common Pleas on January 7, 2009. Abele removed the suit to this court on February 5, 2009.

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

There are three transactions affecting the legal rights of the parties in this case: 1) the 2000 lease and 2001 Retail Sales Agreement between Abele and Five Star; 2) the 2005 sale from Five Star to Taylor; and 3) the 2007 sale, following Abele's repossession of the excavator, of it to Taylor.

The issues arising from these transactions and the parties' respective motions for summary judgment are:

1. Choice of law governing each of the transactions.

2. Application of judicial estoppel to Abele's representations, made in prior litigation in New York state court, regarding its sale of the excavator to Five Star.

3. Taylor's status as a *bona fide* purchaser of the excavator.

4. Disposition of Taylor's claims against Abele arising from Taylor's 2007 repurchase.

**1. Choice of Law**

Taylor argues Ohio's secured transactions laws apply to the 2001 Abele/Five Star, 2005 Five Star/Taylor and the 2007 Abele/Taylor transactions. Abele argues New York law applies to all three.

Both New York and Ohio law follow the UCC with regard to choice of law governing the priority and perfection of security interests:

> Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.

N.Y. U.C.C. § 9-301(a); ORC § 1309.301(a). A debtor's location is determined by his legal status. An individual is located at his primary residence, an organization at its place of business or, if it has more than one, its chief executive office. N.Y. U.C.C. § 9-307(b)(1)-(3); ORC § 1309.307(B)(1)-(3).

The outcome of this case depends on the nature of the 2001 transaction between Abele and its debtor Five Star, and Abele's subsequent perfection of the security interest in the excavator. Five Star's place of business was in Poughkeepsie, New York, at throughout the transactions underlying this case.

For purposes of interpreting the effectiveness of Abele's security interest in the excavator, as well as Taylor's status as a *bona fide* purchaser for value at the time of its 2005 purchase from Five Star, New York law applies.

6

I conclude, however, that Ohio law applies to the events involving Abele's repossession and Abele's repurchase of the excavator occurred in substantial part in Ohio, I apply Ohio law to the determine the legal significance of that portion of this suit.

## 2. Judicial Estoppel

In this litigation, Abele describes its 2001 RSO with Five Star as a "rental purchase." If correct, Abele retain ownership in the excavator. Taylor argues Abele should be judicially estopped from making this assertion. This is so, Taylor contends, because Abele took a contrary position in the New York state court civil proceedings against Five Star.

Abele opposes Taylor's effort to invoke judicial estoppel. It argues that, to the extent it may have represented that its transaction with Five Star was a "rental purchase," it did so due to confusion as to its legal rights. Abele also claims that the New York court did not make a final dispositive finding that the transaction was, in fact, a sale. Absent final adjudication on that issue, Abele states, judicial estoppel is not available to Taylor.

"Federal standards govern the application of judicial estoppel in federal court." *Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir. 1994). The Supreme Court developed three factors in the application of judicial estoppel. First, "a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)).

Second, the party must have convinced another court to accept that position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). Last, I must investigate "whether the party seeking to assert an inconsistent position

7

would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

### A. Clearly Inconsistent Positions

Abele argues that Taylor meets none of these three factors. First, it points to portions of its 2006 motion, claiming that it at times stated that it was involved in a rental transaction, and at other times, a sale transaction. Defendant contends that it was confused about the nature of the transaction and its attendant legal rights. Because, according to Abele, it did not understand the nature of the transaction it had entered into in 2001, it had no idea what rights it had in 2006. This, Abele contends, caused it to waver between its options in its affidavit.

That contention is inconsistent with the plain language of Abele's affidavit. Abele stated the transaction was a rental until 2001, when it entered into the retail sales order with Five Star. Abele's inconsistency arises not from its characterization of the transaction as a sale, but from the specific term – "purchase" -- it used to describe the transaction. Sometimes Abele called it a "rental purchase," sometimes just a "purchase." But Abele consistently used the term "purchase" in the New York proceeding.

Having consistently referred in prior judicial proceedings to the 2001 transaction as a "purchase" – an indisputable synonym for and indicator of a "sale"[4] – Abele cannot not reverse itself and denominate the transaction as a lease, as it does in this case.

### B. Acceptance of an Inconsistent Position

---

[4] Black's Law Dictionary (9th ed. 2009) defines a purchase agreement as "a sales contract". It defines a purchase as "[the act or an instance of buying" and a sale as "[the transfer of property or title for a price." *Id.*

8

Judicial estoppel applies if the initial court "adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Teledyne Indus. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir. 1990).

Contrary to Abele's assertion, whether the New York court rendered a final disposition which adjudicated the transaction as a purchase is irrelevant. Abele swore in an affidavit, as a part of a preliminary matter, that the transaction was a purchase. The New York court, relying on that affidavit, ordered discovery and compelled the Lowins' appearance premised on the contention that they had violated Abele's rights a as owner of the excavator. The court did not have to make a final legal determination on the status of the transaction, it simply had to adopt the position as a preliminary matter in issuing its order.

The New York court adopted the position which Abele had urged upon it that the 2001 retail sales order constituted a sale.

### C. Derivation of an Unfair Advantage/Imposition of an Unfair Detriment

A party may not use "intentional self-contradiction . . . as a means of obtaining unfair advantage." *New Hampshire*, *supra*, 532 U.S. at 751 (quoting *Scarano v. Central Rail Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)).

Allowing Abele to maintain contrary positions would allow it to pursue the Lowins in New York for civil theft charges for having violated the terms of a sale and also to recover the repurchase price of the excavator from Taylor premised on the Lowins' violation of a lease agreement.

Judicial estoppel is an equitable doctrine, invoked at a court's discretion. I invoke it here, to prevent Abele from taking an obviously contrary position and thwarting Taylor's legal rights. The

9

2001 transaction between Five Star and Abele was a sale, governed by the New York Uniform Commercial Code as to perfection and priority of security interests.

### 3. *Bona Fide* Purchaser Status

In New York, "a buyer, other than a secured party, of tangible chattel paper, documents, goods, instruments, or a security certificate takes free of a security interest or agricultural lien if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected." N.Y. U.C.C. § 9-317(b). "A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it." N.Y. U.C.C. § 1-201(25).

Abele's 2001 sale to Five Star left the Abele with a security interest in the equipment. Abele did not perfect its security interest until July 24, 2006, over a year after Taylor had purchased the excavator from Five Star.

Abele argues New York law places the burden of either actual or constructive knowledge on a purchaser. It alleges that Taylor had both actual and constructive knowledge, and had plaintiff done due diligence, it would have known about Abele's security interest.

In New York, a party otherwise qualifying as a *bona fide* purchaser remain such without regard to constructive knowledge of a security interest. *John Deere Co. of Baltimore v. William C. Pahl Const. Co.,* 300 N.Y.S.2d 701 (N.Y. Sup. 1969) (holding that one is a *bona fide* purchaser who takes without the prior security interest if one has no actual knowledge of the interest).

Abele argues that Taylor had actual knowledge of its security interest, and would have had further knowledge of that interest if it had performed its due diligence by searching with the New York Secretary of State's office. The premise of Abele's argument is that its sticker on the

10

excavator's boom put Taylor on notice of its security interest, and alerted Taylor to the possible existence of Abele's unperfected interest.

Abele provides no support for the contention that an owner's sticker on a piece of equipment indicates that seller has a valid, ongoing security interest.[5] I conclude, as a matter of law, that no rational trier of fact could conclude that Abele's sticker on a used excavator put Taylor or anyone else on notice that Abele retained some sort of interest in the machine. [6]

Abele's due diligence/constructive notice argument is similarly unpersuasive. Abele cites *Snow Machines, Inc. v. South Slope Dev. Corp.*, 300 A.D.2d 906 (N.Y.A.D. 2002) as evidence that New York law prevents bona fide purchaser status either through actual or constructive notice of another party's security interest, and that simple investigation on the part of the plaintiff would have revealed defendant's security interest.

The facts in *Snow Machines* were similar to this case: a purchaser of equipment sought *bona fide* purchaser status in the face of an unperfected security interest. 300 A.D.2d at 906. One critical difference renders that case inapposite, however: pre-sale communication between the purchaser and the holder of the security interest revealed the latter's security interest, and gave the purchaser actual knowledge of the interest. *Id.* at 908. The purchaser was not required to inquire with the holder, but

---

[5] Does an auto dealer's nameplate on a vehicle establish that the dealer retains a security interest, otherwise not perfected, in the car?

[6] Defendant argues that plaintiff should have inquired about various other documents, including the certificate of origin and bill of sale. Defendant gives no reason on which a jury could conclude that these documents (or Five Star's lack thereof) would have put plaintiff on notice that defendant held an unperfected security interest. In any event, Abele has pointed to nothing in New York law that suggests that a person otherwise taking in the face of an unrecorded lien has to look further to unearth such documents before the law confirms his *bona fide* purchaser status.

once it gained actual knowledge of the security interest, it could not use its lack of perfection as a shield against the holder's rights.[7]

Whatever diligence New York law required of Taylor, it only applied to Taylor's search for a perfected security interest. Even had plaintiff searched with the New York Secretary of State, there was no security interest on file, and Abele has shown no other communication that would have given Taylor actual notice.

Because Taylor purchased the excavator with no actual knowledge of Abele's security interest, it was a *bona fide* purchaser for value taking the excavator free of that interest.

### 4. Taylor's Claims Against Abele

Taylor asserts five claims against Abele under Ohio law: fraud, civil theft, negligent misrepresentation, unjust enrichment and breach of warranty/contract. I will address the first three claims individually, and the last two claims together.

### A. Fraud

In Ohio, fraud consists of:

> 1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; 2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; 3) intent to induce reliance on the representation; 4) justifiable reliance; and 5) injury proximately caused by the reliance.

*Gouge v. BAX Global, Inc.*, 252 F.Supp.2d 509, 515 (N.D. Ohio 2003).

---

[7] Defendant also argues that N.Y. U.C.C. § 1-201(27) imparts a constructive knowledge requirement to organizations, of which plaintiff is one. This is a misreading of the statute. The section defines when actual or constructive knowledge becomes effective for organizations, *should there be a requirement for either*. That it is meant to define rather than bind is apparent from the fact that § 1-201 is entitled "General Definitions".

Both parties seek summary judgment on this claim. The critical inquiries here are whether Abele made an actual or implied false representation concerning a fact material to the transaction, and whether it had knowledge of its falseness or reckless or utter disregaard for its truthfulness. Although the Abele made false representations concerning its rights relative to the excavator from the time Eby stepped onto the Taylor property until the parties completed the repurchase agreement, I cannot say at this time that it knew that statement was false, or that it had a reckless or utter disregard for the truthfulness of that statement based on the facts pled in the parties' motions.

Although plaintiff is a *bona fide* purchaser who took free of Abele's security interest, it is not clear whether Abele knew that at the time. Even if Abele should have known of Taylor's status, the standard for fraud requires more than the imputation of knowledge. At the very least, Taylor must show Abele acted with reckless or utter disregard for Taylor's status as a *bona fide* purchaser.

I deny both parties' motions for summary judgment with regard to the claim for fraud.

### B. Civil Theft

In Ohio, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: . . . [b]y deception [or] [b]y threat[.]" ORC § 2913.02(A)(3), (4). "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action." ORC § 2307.60(A)(1).

Taylor bases its claims for deception and threat on the interactions it had with Eby on March 6, 2007, and Abele on March 7, 2007. During those interactions – particularly the former – Taylor contends that Abele deceived it as to the nature of its interest in the excavator and its intention to pursue criminal charges against Five Star and Taylor if the Taylor did not return the excavator.

13

Theft by deception requires a finding of knowing intent on the part of the accused to deceive in order to gain control over property to which it is not entitled. *See, e.g., State v. Taylor*, 2003 WL 366779 (Ohio App. 2003). Much like Taylor's fraud claim, the statements in question were false in light of Taylor's *bona fide* purchaser status, but I cannot determine from the facts in the parties' motions whether Abele intended to deceive Taylor to gain control over the excavator or Taylor's repurchase payment.

Taylor alleges theft by threat, which may be "a lesser included offense of robbery." *State v. Habtemariam*, 103 Ohio App.3d 425, 429 (1995). "The summary distinction between theft by threat and robbery is that robbery requires a threat of immediate force, while theft by threat only requires a threat of future harm." *Id.* The Advisory Notes to ORC § 2913.02 state, "The threat involved in theft is not restricted to the threat of personal harm, which is one of the distinguishing characteristics of robbery." "The actor must know that he is obtaining or exerting control over the property or service because of the threat and must do so with the intent to permanently deprive the owner of the property or service, or its value." Ohio Jurisprudence 3d, Criminal Law § 1278.

Again, determinative facts regarding Abele's intent are lacking in the parties' motions, as in the fraud and theft by deception charges.

I deny both parties' motions for summary judgment with regard to Taylor's claim for civil theft.

### C. Negligent Misrepresentation

The elements of negligent misrepresentation are: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for

14

pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 (1989).

Taylor argues that Abele supplied false information, by claiming both status as rightful owner of the excavator and, through Eby, that Dutchess County was prosecuting Five Star for stealing the excavator. Taylor then argues that it justifiably relied on Abele's representations.

Abele's claim that it was the rightful owner of the excavator was unquestionably false at the time it was made, and negligent misrepresentation carries no requirement of intent. To the extent that Taylor must show negligence, a jury could only find that Abele was negligent when it sought repossession of Taylor's lawfully purchased excavator. Abele knew it had not perfected a security interest; the law also charges it with knowledge that it and Eby lacked a lawful basis for asserting a claim of ownership *vis-a-vis* a *bona fide* purchaser.

"Establishing justifiable reliance does not require a showing that the plaintiff's reliance conformed to what a 'reasonable man' would have believed." *Davis v. Montenery*, 880 N.E.2d 488, 498 (Ohio App. 2007). Instead, justifiable reliance "involves a fact-based inquiry into the circumstances of the claim and the relationship between the parties." *Id*.

Eby, Abele's representative, showed up unannounced on the evening of March 6, 2007, to inform Taylor that it had possession of what Abele's claimed was its stolen property. Although the contents of the conversation are not clear, it is uncontroverted that Eby told Taylor of both Abele's claim to the excavator and the charges it was pursuing against Five Star. At the time, uniformed police officers were present, and monitoring the conversation. Taylor agreed to surrender the allegedly stolen excavator to Abele, and repurchased it from Abele the next day.

Taylor clearly and justifiably relied on Abele's false representation that it owned the excavator.[8] Confronted by a repossession agent, apparently accompanied by two police officers, and allegations of being in possession of stolen property, Taylor, a rational jury could only find, justifiably relied on those representations when it surrendered and then purchased the excavator. defendant

I grant Taylor's and deny Abele's motion for summary judgment with regard to Abele's claim for negligent misrepresentation.

### D. Unjust Enrichment, Breach of Warranty/Contract

Taylor alleges both unjust enrichment and breach of contract based on Abele's breach of its warranty that it was the rightful owner. Abele asserts the waiver and release which plaintiff signed thirteen days after it agreed to repurchase the excavator exempts it from these claims.

Unjust enrichment is an equitable doctrine, allowing a court to imply a "quasi-contract" wherein a party "retains money or benefits which in justice and equity belong to another." *MVB Mortg. Corp. v. F.D.I.C.*, 2010 WL 654051, *3 (S.D. Ohio). A party may plead unjust enrichment claims in the alternative to a breach of contract claim when the existence of a written contract is in dispute. *See Resource Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp.2d 763, 772 (N.D. Ohio 2004). Unjust enrichment claims, however, cannot stand in the face of a written contract – a plaintiff cannot get two bites at the apple for a single agreement.

Taylor agreed to repurchase the excavator from Abele on March 7, 2007, signing a sales order that day memorializing the relevant aspects of the sale. The record shows two checks written to Abele, one for $1,000 and the other for $64,000. Because a written contract governs this

---

[8] Taylor's argument concerning Five Star's prosecution and the threat of its own criminal charges is too vague for me to reach a decision on its contentions, and I do not do so.

transaction, I must grant Abele's motion for summary judgment as to Taylor's unjust enrichment claim.

### E. Invalidity of Release

Thirteen days after Taylor repurchased the excavator, Abele caused Taylor to sign a release of all claims arising from the transaction. This, in Abele's view, protects it from liability to Taylor for any damages Taylor incurred as a result of Abele's wrongful repossession of the excavator.

I disagree. As stated in *Barnes v. Ricotta,* 142 Ohio App.3d 560, 566 (2001), "A release is a contract that requires an offer, acceptance, and consideration like any other contract." When the parties signed the putative release, Abele was providing no new consideration. The parties had consummated and fully performed the repurchase agreement. Abele's acquiescence in Taylor's continuing possession of the excavator could not provide the needed consideration for the release. That being so, I find that the release is unenforceable as a matter of law.

I grant Taylor's motion for summary judgment.

### 5. Motion to Dismiss for Failure to Join an Indispensable Party

Abele filed a motion to dismiss for failure to join an indispensable party on February 3, 2012. My order dated November 25, 2009, set the final deadline for dispositive motions such as this newly filed motion for April 30, 2010. [Doc. 14]. Defendant has not filed a motion for leave to extend that deadline.

I deny defendant's motion without addressing its merits, as it comes nearly two years after the deadline for such motions.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendant's motion for summary judgment [Doc. 40] be, and the same hereby is granted as to plaintiff's claim for unjust enrichment, and denied on all other grounds.

2. Plaintiff's motion for summary judgment [Doc. 47] be, and the same hereby is granted as to the defendant being judicially estopped from asserting that the transaction was a lease rather than a sale, plaintiff's status as a *bona fide* purchaser for value, negligent misrepresentation and with reference to plaintiff's contention that the release is unenforceable, and denied on all other grounds.

3. Defendant's motion to dismiss for failure to join an indispensable party [Doc. 69] be, and the same hereby is denied.

4. Case referred to United States Magistrate Judge Armstrong to conduct a settlement conference.

So ordered.

s/James G. Carr
Sr. United States District Judge